

STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. _____

WILFRED DESORMEAU,

    Plaintiff

    v.

CVS STATE CAPITAL, LLC, d/b/a
CVS/PHARMACY #378 and
CVS/PHARMACY #2382,
a corporation registered to do business
in the State of Maine, with places of
business in Auburn, County of
Androscoggin, and Windham, County
of Cumberland and State of Maine,

    and

CVS RX SERVICES, INC.,
a New York corporation registered to do
business in the State of Maine, with places
of business in Auburn, County of
Androscoggin, and Windham, County
of Cumberland and State of Maine,

    and

CAREMARK PHC, LLC, d/b/a/ CVS
CAREMARK, a Delaware corporation
registered to do business in the
State of Maine, operating places of
business in Auburn, County of
Androscoggin, and Windham, County
of Cumberland and State of Maine,

    and

CVS HEALTH CORPORATION,
a Delaware corporation headquartered in
Rhode Island, operating places of
business in Auburn, County of
Androscoggin, and Windham, County
of Cumberland and State of Maine,

    Defendants

JURY TRIAL REQUESTED AND
INJUNCTIVE RELIEF SOUGHT

## COMPLAINT

Wilfred Desormeau makes the following complaint against CVS State Capital, LLC, d/b/a CVS Pharmacy #378 and CVS Pharmacy #2382, CVS Rx Services, Inc., Caremark PHC, LLC and CVS Health Corporation (collectively, "Defendants" or "CVS"):

### Nature of Action

1.  This is an action under Title I of the Americans With Disabilities Act of 1990, as amended ("ADA"), the Americans with Disabilities Act as Amended ("ADAAA"), the Age Discrimination in Employment Act ("ADEA") and the Maine Human Rights Act ("MHRA"), to correct and remedy unlawful employment practices on the basis of disability and age and to make whole and compensate the Plaintiff.

2.  For nearly three years after he was cleared to return to work after a stroke, and despite calls, texts, faxes and in-person requests, CVS refused to return Plaintiff to work at anywhere near the capacities he was capable of working and what he asked for.  Instead, he received very few—if any—hours of work a month, many of which were shifts that he was not scheduled for but agreed to cover on short notice in stores all across Maine, not in his home store in Windham, Maine.

3.  This chart shows how many hours Mr. Desormeau *could* work and *asked* to work, compared with how many hours he was *actually* given by CVS, as alleged more fully below:



4.   Mr. Desormeau was also never considered for any of the open pharmacist positions he requested, all of which went to younger employees.

5.   Defendants discriminated against the Plaintiff, a qualified individual with a disability over the age of 40, because of his disability and age, as more particularly set forth in this complaint.

### Parties and Jurisdiction

6.   The Plaintiff, Wilfred Desormeau, resides in Naples, Maine.

7.   The Defendant, CVS State Capital, LLC, is a Maine corporation licensed to do business in Maine.  This Defendant does business under a number of assumed names in many locations in Maine, including CVS/PHARMACY #378 in Windham Maine and CVS/PHARMACY #2382 in Auburn, Maine.

8.   CVS Rx Services, Inc., is a New York corporation registered to do business in Maine and the parent corporation of CVS State Capital, LLC, as well as its legal corporate name.

CVS Rx Services, Inc. operates places of business in many Maine locations, including in Auburn and Windham, Maine.

9. Caremark PHC, LLC, is a Delaware corporation licensed to do business in Maine. This Defendant does business under a number of assumed names in Maine, including CVS Caremark. Caremark PHC, LLC, operates places of business in many Maine locations, including in Auburn and Windham, Maine.

10. CVS Health Corporation is a Delaware corporation and the parent corporation of Caremark PHC, LLC, CVS Rx Services, Inc. and CVS State Capital, LLC. CVS Health Corporation operates places of business in many Maine locations, including in Auburn and Windham, Maine.

11. Defendants were the integrated employer or joint employer of Plaintiff and effectively operate as one company.

12. On information and belief, CVS Health Corporation is the umbrella or parent corporation that owns, operates and manages the other subsidiary Defendants.

13. On information and belief, control over human resource functions such as hiring, training, firing and discipline is exercised by CVS Health Corporation over the subsidiary Defendants.

14. There was and is an interrelation of operations between the CVS Defendants, common management, centralized control of labor relations and common ownership or financial control.

15. The decision to terminate Plaintiff after 36 years of service was made by a committee of employees at CVS Health Corporation.

16. Plaintiff's personnel file is maintained by CVS Health Corporation.

17.   In 2010, Plaintiff was awarded stock options by Caremark PHC, LLC, which was doing business as CVS Caremark.

18.   Plaintiff's requests for reimbursement for continuing education were submitted to CVS Health in Rhode Island.

19.   Plaintiff's paychecks were issued by CVS Rx Service, Inc.

20.   Plaintiff communicated with his supervisors and schedulers at their CVSCaremark.com email addresses.

21.   Defendants have had more than 250,000 employees for each working day in each of 20 or more calendar weeks in the same calendar year as, or in the calendar year prior to, when the discrimination alleged in this case occurred.

22.   Venue lies in Androscoggin County pursuant to 14 M.R.S. § 505 because Defendants have an established place of business in Auburn, Maine.

23.   On or about March 23, 2016, Plaintiff filed a complaint of discrimination with the Maine Human Rights Commission ("MHRC").

24.   More than 180 days having passed, the MHRC issued a right to sue letter on February 14, 2017, pursuant to 5 M.R.S. § 4612 and § 4622.

25.   On or about March 23, 2016, the Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination. The charge of discrimination was timely filed and included the discrimination complained of in this Complaint.

26.   On February 1, 2017, the EEOC mailed the Plaintiff a Notice of Right to Sue (the "Notice"), certifying that the EEOC was terminating its processing of the charge, and that the Plaintiff could file a civil action against the Company within 90 days from receipt of the Notice.

27.   The Plaintiff received a copy of the Notice on or about February 6, 2017, and the Plaintiff

has timely instituted this action.

28.   Plaintiff has exhausted all administrative remedies.

### Jury Demand

29.   Plaintiff demands trial by jury of all claims to the extent allowed by law.

### Factual Background

30.   Before he had a stroke in November 2012, Plaintiff worked as a full-time pharmacist at

CVS for more than 30 years, providing exemplary service to the Company.

31.   While he was recuperating, Plaintiff was in touch with his manager, Anne Theriault,

regularly to update her on his status.  She knew that he wanted to come back to work as

soon as he was able.

32.   On June 6, 2013, Plaintiff's doctor cleared him to return to work 20 hours a week.  He

completed a Fitness for Duty Certification and faxed it to both Anne and his scheduler,

Elizabeth Splane, on the same day:



33.   Despite being cleared to return to work 20 hours a week on June 6th, Plaintiff only

worked a total of 12 hours for *the entire month* of June.

34.  In July, 2013, Plaintiff again worked a total of 12 hours.

35.  In August, 2013, Plaintiff was given only 11 hours the whole month.

36.  Each time Plaintiff met with his doctor and was cleared to work more, he faxed his doctor's notes to CVS so that he could get back to what he loved: being a pharmacist.

37.  On August 29, 2013, Plaintiff was cleared by his doctor to return to work for 12 hours a week: 6 hours a day, 2 days a week.  He again faxed a Return to Work note with this information to Anne and Elizabeth that same day:

> Remarks: Patient may do 6 hour work days 2 days a week as long as he does not have a 2 hour travel time around trip.

38.  Plaintiff worked 40 hours for the month of September – 40 hours for the whole month, not for a week.  He then was given only 20 hours for the entire month of October and 24 hours for the month of November.

39.  In November 2013, Plaintiff was switched from being classified as a full-time employee to a part-time employee, which meant that he lost his health benefits and began to have to pay for his benefits, including health insurance, out of pocket.

40.  Plaintiff worked 66 hours in December.

41.  In 2014, Plaintiff's hours inexplicably dropped more, even though he was cleared for more and more work by his doctor and requested additional hours multiple times.  In January, he worked 22 hours, but he *did not get a single shift in February*.

42.  On February 20, 2014, Mr. Desormeau was cleared by his doctor to return to work for 16 hours a week, no more than 8 hours a day.  He again faxed a Return to Work note with this information to Anne and Elizabeth, CVS management, that same day:

and is able to return to _____ school _____ on _____

Remarks: Patient can go to a 16 hour work week. Patient is not to work greater than 8 hours in one day.

43. In March, 2014, Plaintiff met with Anne for his annual performance review. During this review, he told Anne that he wanted to work more hours, and she said that she would increase his hours.

44. Nevertheless, in March, Plaintiff worked only 21 hours for the entire month and was given only 10 hours in April, despite being cleared to work approximately 64 hours a month during this time. In May, Plaintiff worked only 4 hours during the entire month.

45. In May, 2014, Plaintiff's COBRA insurance coverage ran out, and he was forced to pay for additional insurance coverage through Medicare Part B, as well as purchase independent dental coverage.

46. In June, 2014, he worked 12 hours for the month.

47. In July, 2014, Plaintiff was given 4 hours for the entire month—approximately just 6% of the number of hours he was cleared to work.

48. Plaintiff was then not given a single hour of work in August, 2014.

49. On August 25th, 2014, Plaintiff was cleared by his doctor to return to work full-time, which is thirty hours a week for a pharmacist at CVS. He faxed a Return to Work note with this information to Anne and Elizabeth, CVS management, on or about August 27th:

Remarks: Patient is able to go to a 30 hour work week with a max. of 10 hours daily.

50.   At no point prior to when Plaintiff retained counsel to advocate for him did anyone at

      CVS respond to Plaintiff's requests to work full-time.

51.   On September 23, 2014, Plaintiff was cleared by his doctor to return to work for 35 hours

      a week, no more than 13 hours a day.  He faxed his Return to Work note with this

      information to Anne and Elizabeth on or about September 24th:



52.   Despite being cleared to work 35 hours *a week*, Plaintiff was given only 4 hours for the

      month of October, 2014.

53.   On November 17, 2014, Plaintiff was cleared by his doctor to return to work for an

      unlimited number of hours per week but no more than 13 hours a day.  He faxed his

      Return to Work note with this information to Anne and Elizabeth on the same day:

54.   Plaintiff worked 9 hours in November, 2014 and 9 hours in December, 2014.

55.   Despite all of his efforts to get more hours and back to work full-time, Defendants

      inexplicably failed to return Plaintiff to work at anywhere near the capacities he was

      capable of working and what he asked for in 2015.

56.   Plaintiff worked 26 hours in January 2015 and 12 hours in February, 2015.

57. In March, 2015, Plaintiff texted his scheduler to ask for more hours, but she never responded and did not increase his hours.

58. Plaintiff worked only 8 hours for the month of March, 8 hours in April and 8 hours in May.

59. In May, 2015, Plaintiff saw an opening for a full-time pharmacist in the Forest Avenue, Portland, CVS store. He texted both Anne and Elizabeth about the position, but neither of them responded to him at all, let alone told him that he should apply online. There was no communication at all. The position was given to another pharmacist.

60. In June, 2015, there was another opening for a full-time pharmacist at Plaintiff's old home CVS store in Windham, Maine. He reached out to Elizabeth about the position, who he thought would tell Anne. Again, there was no response at all, and the position was given to another pharmacist who was 30 to 40 years younger than Plaintiff.

61. Plaintiff worked only 6.5 hours in June, 2015.

62. In July, 2015, there was another opening for a full-time pharmacist at Plaintiff's home CVS store in Windham, Maine. He texted Elizabeth about the position, but she did not respond at all, and the position again went to another pharmacist who was in her late 20s or early 30s, decades younger than Plaintiff.

63. For the rest of 2015, Plaintiff continued to work few and erratic hours. He worked 26 hours in July, 18.5 hours in August, 0 hours in September, 7 hours in October, 0 hours in November and 0 hours in December. All told, Plaintiff only worked 120 hours the entire year, despite the fact that he was cleared to work full-time for the entire period.

64. Adding insult to injury, on October 19, 2015, Plaintiff received a letter from CVS stating that he was going to be terminated automatically because he had not worked in 45 days,

even though he had been *pleading* for more hours in every way that he knew of for more

than a year:

Dear Colleague:

Our records indicate that you have not worked any hours at a CVS/pharmacy location causing you to not
be issued pay in over 45 days. Under CVS' policy, if you have not been paid for hours worked within
120 consecutive days, your employment status will be changed from "active" to "terminated". Your
termination date will be equal to the end of the last pay period for which you were paid. If your CVS
employment status changes to "terminated", as a result of not working within 120 days, your termination
date will be 8-16-2015.

Vested stock options will expire as of 8-16-2015 and all unvested stock options will be immediately
forfeited upon termination.

Please contact your pharmacy supervisor if you

have any questions or concerns, or if you would like to return to work. If you have returned to work and
have received a paycheck since 8-16-2015, or if you have otherwise separated from the company
(including having been terminated and re-hired), please disregard this letter.

65.   After receiving this "Dear Colleague" letter, Plaintiff faxed it to Anne and Elizabeth

asking for more hours again.  Elizabeth texted back in response that she would give him

more hours the next month, but nothing changed and he continued to work sporadic shifts

all across the state.

66.   In January and February 2016, Defendants refused to schedule Plaintiff for a single shift.

67.   In March, 2016, Plaintiff was given his annual review by Anne, which indicated that he

met expectations, and he was given a raise.  During this meeting, Plaintiff asked Anne

again to be returned to full-time employment, and she stated that she would get him more

hours.  He also asked if CVS got his doctor's notes, and she confirmed they were

received.

68. The straw that broke the camel's back was another "Dear Colleague" termination letter

Plaintiff received in March 2016, even though he wanted so badly to work.

Dear Colleague:

Our records indicate that you have not worked any hours at a CVS/pharmacy location causing you to not be issued pay in over 45 days. Under CVS' policy, if you have not been paid for hours worked within 120 consecutive days, your employment status will be changed from "active" to "terminated". Your termination date will be equal to the end of the last pay period for which you were paid. If your CVS employment status changes to "terminated", as a result of not working within 120 days, your termination date will be 12/20/2015.

69. This letter was incredibly upsetting for him because he wanted to work and asked to work

in every way he could think of, and Defendants ignored his requests for years.  Enough

was enough.

70. It wasn't until Plaintiff retained the undersigned counsel and filed a complaint with the

Maine Human Rights Commission that CVS finally found Plaintiff the full-time position

he had been requesting for more than a year.  Suddenly, when a lawyer was involved,

work became available.

71. Starting in May 2016, he began working as a full-time pharmacist in the Auburn, Maine,

CVS store.

72. Unfortunately, after finally being returned to work, Plaintiff began receiving negative

write ups and "performance feedback," which he had not previously received in his 30

plus year career at CVS.

73. The parties engaged in mediation at the MHRC on September 14, 2016.  Two weeks

later, on October 3rd, Plaintiff was summarily terminated without a warning for an

incident that had occurred weeks before back in August.  The timing of his termination is troubling to say the least.

## COUNT I:
## Disability Discrimination under the ADA and ADAAA

74.    The Plaintiff incorporates and realleges the above paragraphs as if fully set forth here.

75.    Plaintiff was a qualified person with a disability as defined by the ADA and ADAAA, 42 U.S.C. § 12102 *et seq.*

76.    Defendants knew of Plaintiff's stroke in 2012 and his resulting disability, as well as his temporary work restrictions based on his disability after he was cleared to work in 2013.

77.    Defendants, through their duly authorized agents and employees, who acted on behalf of their employers within the scope of their employment, intentionally discriminated against the Plaintiff based on his disability by retaliating against Plaintiff for being disabled and for failing to return him to work after being out on leave while he recuperated from a stroke.

78.    Plaintiff was and is qualified for the pharmacist position at CVS despite his disability, since he satisfies the skill, experience, and other job-related requirements for the position, and since Plaintiff was and is able to perform the essential functions of the position with or without reasonable accommodations.

79.    Plaintiff suffered the adverse employment actions of being kept out of work for no legitimate reason after he was cleared to return, not being hired into vacant full-time pharmacist positions, and being written up and eventually terminated under troubling circumstances after he filed suit with the MHRC.

80. The alleged reason for terminating the Plaintiff's employment was mere pretext for the real reason, namely, the intentional discrimination by Defendants against the Plaintiff based on his disability.

81. Defendants engaged in discriminatory action in the face of a perceived risk that their actions would violate federal law. Their acts and omissions were done maliciously or with reckless indifference to Plaintiff's federal protected rights. Defendants made no good faith effort to prevent discrimination in Plaintiff's workplace.

82. As a direct and proximate result of the intentional discriminatory acts and practices of Defendants, their agents and employees, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

## COUNT II:
## Disability Discrimination under the MHRA

83. The Plaintiff incorporates and realleges the above paragraphs as if fully set forth here.

84. Plaintiff is and was at all times pertinent to this action covered by the provisions of the MHRA, 5 M.R.S. § 4551 *et seq.*

85. Plaintiff was and is qualified for the pharmacist position at CVS despite his disability, since he satisfies the skill, experience, and other job-related requirements for the position, and since Plaintiff was and is able to perform the essential functions of the position with or without reasonable accommodations.

86. Defendants, through their duly authorized agents and employees, who acted on behalf of their employers within the scope of their employment, intentionally discriminated against

14

the Plaintiff based on his disability by retaliating against Plaintiff for being previously disabled, refusing to return him to work after being out on leave while he recuperated from a stroke, and refusing to give him hours at work.

87. Plaintiff suffered the adverse employment actions of being kept out of work for no legitimate reason after he was cleared to return, not being hired into vacant full-time pharmacist positions and being written up and eventually terminated under troubling circumstances after he filed suit in the MHRC.

88. The alleged reason for refusing to return Plaintiff to work and then terminating him was mere pretext for the real reason, namely, the intentional discrimination by Defendants against the Plaintiff based on his disability.

89. Defendants acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied. Defendants were also motivated by discriminatory intent.

90. As a direct and proximate result of the intentional discriminatory acts and practices of Defendants, their agents and employees, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

91. Defendants discriminated against Plaintiff in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq*.

## COUNT III:
### Retaliation under the ADA and ADAAA

92.   The Plaintiff incorporates and realleges the above paragraphs as if fully set forth here.

93.   Plaintiff was a qualified person with a disability as defined by the ADA and ADAAA, 42 U.S.C. § 12102.

94.   CVS knew of Plaintiff's stroke in 2012 and his resulting disability, as well as his temporary work restrictions based on his disability after he was cleared to work in 2013.

95.   Plaintiff was and is qualified for the pharmacist position at CVS despite his disability, since he satisfies the skill, experience, and other job-related requirements for the position, and since Plaintiff was and is able to perform the essential functions of the position with or without reasonable accommodation.

96.   Plaintiff engaged in the protected conduct of requesting a reduced working schedule while he worked his way back up to being able to work full-time as a pharmacist, which he became able to do in August 2014.  He also engaged in the protected conduct of filing suit in the MHRC.

97.   Defendants, through their duly authorized agents and employees, who acted on behalf of their employers within the scope of their employment, retaliated against Plaintiff for requesting and needing a reduced work schedule while he worked his way back up to being able to work full-time as a pharmacist by failing to return him to work at levels anywhere near what he was capable of and had requested; reclassifying Plaintiff as a part-time employee, with the effect that he lost health insurance among other benefits; failing to hire Plaintiff into the open positions he requested and was qualified for; and giving him write ups and termination after he returned to work and had filed suit at the MHRC.

98.   Due to the temporal proximity of Plaintiff requesting accommodations and his failure to be returned to work and, later, his termination, one can infer the causal link between the protected activities and the adverse actions.

99.   Defendants engaged in discriminatory action in the face of a perceived risk that their actions would violate federal law.  Their acts and omissions were done maliciously or with reckless indifference to Plaintiff's federal protected rights.  Defendants made no good faith effort to prevent discrimination in Plaintiff's workplace.

100.   As a direct and proximate result of the retaliatory acts and practices of Defendants, their agents and employees, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

### COUNT IV:
### Retaliation under the MHRA, 5 M.R.S. § 4633

101.   The Plaintiff incorporates and realleges the above paragraphs as if fully set forth here.

102.   After suffering a stroke in 2012, Plaintiff worked hard to be able to return to his position as a full-time pharmacist at CVS.  After being cleared to return to work on a reduced schedule in June 2013, and as alleged in more detail in this Complaint, Plaintiff engaged in the protected conduct of requesting a series of accommodations until he was able to return to work full-time, after which he requested to be made full-time again, as well as filing a complaint with the MHRC when his pleas to return to work went ignored for more than a year.

103.   Defendants, through their duly authorized agents and employees, who acted on behalf of their employers within the scope of their employment, retaliated against Plaintiff for

requesting and needing a reduced work schedule while he worked his way back up to being able to work full-time as a pharmacist by failing to return him to work at levels anywhere near what he was capable of and had requested; reclassifying Plaintiff as a part-time employee, with the effect that he lost health insurance among other benefits; failing to hire Plaintiff into the open positions he requested and was qualified for; and giving him write ups and termination after he returned to work and had filed suit at the MHRC.

104. Due to the temporal proximity of Plaintiff requesting accommodations, his repeated requests to be returned to work, and his failure to be returned to work and, later, his termination, one can infer the causal link between the protected conduct and the adverse actions.

105. Bias may be inferred from Defendants' false statements to Plaintiff about giving him more hours, such promises in response to Plaintiff's requests mere pretext.

106. Defendants acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

107. As a direct and proximate result of the retaliatory acts and practices of Defendants, their agents and employees, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

## COUNT V:
### Age Discrimination under the ADEA

108. The Plaintiff incorporates and realleges the above paragraphs as if fully set forth here.

109.   Defendants are, and were at all relevant times, employers in an "industry affecting commerce" as defined in 29 U.S.C. § 630.

110.   Plaintiff is and has been over 40 years of age at all times relevant to this Complaint.

111.   After suffering a stroke in 2012, Plaintiff worked hard to be able to return to his position as a full-time pharmacist at CVS.  After being cleared to return to work on a reduced schedule in June 2013, and as alleged in more detail in this Complaint, Plaintiff's work was sufficient to meet Defendants' legitimate expectations, as evidenced by, *inter alia*, his positive reviews.

112.   Despite his positive reviews, Defendants, through their duly authorized agents and employees, who acted on behalf of their employers within the scope of their employment, discriminated and retaliated against Plaintiff on the basis of his age by failing to return him to work at levels anywhere near what he was capable of and had requested; reclassifying Plaintiff as a part-time employee, with the effect that he lost health insurance among other benefits; refusing to hire Plaintiff into the open positions he requested and was qualified for; and giving him write ups and termination after he returned to work and had filed suit at the MHRC.

113.   On information and belief, Defendants have sought a replacement for Plaintiff, revealing a continued need for full-time pharmacists in the Auburn CVS location.  CVS also operates a number of other CVS Pharmacies in Maine, where there are often other openings for full-time pharmacists.

114.   Despite several openings that occurred in the CVS pharmacy in Windham, Plaintiff was rejected in favor of much younger pharmacists.

115.   Defendants' violations of the ADEA were and are willful violations within the meaning of the ADEA.

116.   As a direct and proximate result of the retaliatory acts and practices of Defendants, their agents and employees, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

### COUNT VI:
### Age Discrimination under the MHRA

117.   The Plaintiff incorporates and realleges the above paragraphs as if fully set forth here.

118.   Plaintiff is and was at all times pertinent to this action covered by the provisions of the MHRA, 5 M.R.S. § 4551 *et seq.*

119.   Plaintiff was and is qualified for the pharmacist position at CVS despite his age, since he satisfies the skill, experience, and other job-related requirements for the position, and since Plaintiff was and is able to perform the essential functions of the position.

120.   Defendants, through their duly authorized agents and employees, who acted on behalf of their employers within the scope of their employment, intentionally discriminated against the Plaintiff based on his age, refusing to return him to work and then giving new positions that opened up to employees less than half his age.

121.   Plaintiff suffered the adverse employment actions of being kept out of work for no legitimate reason after he was cleared to return, not being hired into vacant full-time pharmacist positions and being written up and eventually terminated under troubling circumstances after he filed suit in the MHRC.

122.   The alleged reason for refusing to return Plaintiff to work and then terminating him was mere pretext for the real reason, namely, the intentional discrimination by Defendants against the Plaintiff based on his age.

123. Defendants acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied. Defendants were also motivated by discriminatory intent.

124. As a direct and proximate result of the intentional discriminatory acts and practices of Defendants, their agents and employees, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

125. Defendants discriminated against Plaintiff in violation of the Maine Human Rights Act, 5 M.R.S. § 4551 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order providing as follows:

A.     Enter judgment declaring that the Defendants' practices complained of herein are unlawful as alleged;

B.     Grant Plaintiff a permanent injunction enjoining Defendants, its officers, agents, successors, employees, attorneys and assigns and other representatives, and all persons acting in concert with it and at its direction, from engaging in any employment policy or practice which retaliates against Plaintiff;

C.     Order Defendants to make Plaintiff whole by providing reinstatement and/or front pay, appropriate back pay, and reimbursement for health, medical and other benefits in amounts to be shown at trial;

D.     Order Defendants to pay Plaintiff compensatory damages for non-pecuniary losses, including, but not limited to, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, and damage to his reputation;

E.     Order Defendants to pay Plaintiff civil penal damages pursuant to 5 M.R.S. § 4613(2)(B)(7);

F.     Order Defendants to pay Plaintiff liquidated damages under the ADEA, 29 U.S.C. § 626(b), and such legal or equitable relief as may be appropriate to effectuate the purposes of the ADEA, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation;

G.     Order Defendants to pay punitive damages;

H.     Order Defendants to pay legal fees, litigation costs and expert witness fees;

I.     Order Defendants to pay Plaintiff nominal damages;

J.     Order Defendants to pay pre-judgment, post-judgment interest, and reasonable attorneys' fees to Plaintiff; and

K.     Grant such additional relief as this Court deems appropriate.


Rebecca S. Webber, Esq., Bar No. 7908
Amy Dieterich, Esq., Bar No. 5413
*Attorneys for Plaintiff*
Skelton, Taintor & Abbott
95 Main Street
Auburn, ME 04210
207-784-3200
rwebber@STA-law.com
adieterich@STA-law.com

DATED:  March 8, 2017

22

## SUMMARY SHEET

This summary sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by the Maine Rules of Court or by law. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet and attaching the appropriate party to the appropriate count or counts. (SEE INSTRUCTIONS ON REVERSE)

I.   **County of Filing or District Court Jurisdiction: ANDROSCOGGIN COUNTY**

II.   **CAUSE OF ACTION** (Cite the primary civil statutes under which you are filing, if any.)  Pro se plaintiffs: If unsure, leave blank.   **ADA, ADEA, Maine Human Rights Act**

III.   **NATURE OF FILING**
- ■ Initial Complaint
- ☐ Third-Party Complaint
- ☐ Cross-Claim or Counterclaim
- ☐ If Reinstated or Reopened case, give original Docket Number _____
      (If filing a second or subsequent Money Judgment Disclosure, give docket number of first disclosure)

IV.   ☐ **TITLE TO REAL ESTATE IS INVOLVED**

V.   **MOST DEFINITIVE NATURE OF ACTION**   (Place an X in one box only.)  Pro se plaintiffs: If unsure, leave blank.

### GENERAL CIVIL (CV)

| Personal Injury Tort | Contract | [ ]Other Forfeitures/Property Libels |
|---|---|---|
| [ ]Property Negligence | [ ]Contract | [ ]Land Use Enforcement (80K) |
| [ ]Auto Negligence | **Declaratory/Equitable Relief** | [ ]Administrative Warrant |
| [ ]Medical Malpractice | [ ]General Injunctive Relief | [ ]HIV Testing |
| [ ]Product Liability | ☐ Declaratory Judgment | [ ]Arbitration Awards |
| [ ]Assault/Battery | [ ]Other Equitable Relief | [ ]Appointment of Receiver |
| [ ]Domestic Torts | **Constitutional/Civil Rights** | [ ]Shareholders' Derivative Actions |
| [ ]Other Negligence | [ ]Constitutional/Civil Rights | [ ]Foreign Deposition |
| [ ]Other Personal Injury Tort | **Statutory Actions** | [ ]Pre-action Discovery |
| **Non-Personal Injury Tort** | [ ]Unfair Trade Practices | [ ]Common Law Habeas Corpus |
| [ ]Libel/Defamation | [ ]Freedom of Access | [ ]Prisoner Transfers |
| [ ]Auto Negligence | | [ ]Foreign Judgments |
| [ ]Other Negligence | [X ]Other Statutory Actions | [ ]Minor Settlement |
| [ ]Other Non-Personal Injury Tort | **Miscellaneous Civil** | [ ]Other Civil |
| | [ ]Drug Forfeitures | |

### CHILD PROTECTIVE CUSTODY (PC)

[ ]Non-DHS Protective Custody

### SPECIAL ACTIONS (SA)

Money Judgments          [ ]Money Judgments

### REAL ESTATE (RE)

| Title Actions | Foreclosure | Misc. Real Estate | [ ]Nuisance |
|---|---|---|---|
| [ ]Quiet Title | [ ]Foreclosure for Non-pmt (ADR exempt) | [ ]Equitable Relief | [ ]Abandoned Roads |
| [ ]Eminent Domain | | [ ]Mechanics Liens | [ ]Other Real Estate |
| [ ]Easements | [ ]Foreclosure - Other | [ ]Partition | |
| [ ]Boundaries | **Trespass** | [ ]Adverse Possession | |
| | [ ]Trespass | | |

### ☐APPEALS (AP) (To be filed in Superior Court) - (ADR exempt)

[ ]Governmental Body (80B)          [ ]Administrative Agency (80C)          [          ]Other          Appeals

VI.   **M.R.Civ.P. 16b Alternative Dispute Resolution (ADR):**
- [ ] I certify that pursuant to M.R.Civ.P. 16B(b), this case is exempt from a required ADR process because:
- [ ] IT falls within an exemption listed above (i.e., an appeal or an action for non-payment of a note in a secured transaction).
- [ ]The plaintiff or defendant is incarcerated in a local, state or federal facility.
- [ ]The parties have participated in a statutory pre-litigation screening process with Maine Human Rights Commission (name of neutral) on _____ (date).
- [ ]The parties have participated in a formal ADR process with _____ (name of neutral) on _____ (date).
- [ ]This is a Personal Injury action in which the plaintiff's likely damages will not exceed $30,000, and the plaintiff requests an exemption from ADR.

Date filed: _____

VII. (a) **PLAINTIFFS** (Name & Address including county)
　 or 　[ ]Third-Party 　　[ ]Counterclaim or Cross-Claim Plaintiffs
　　　　[ ]The plaintiff is a prisoner in a local, state or federal facility.

Wilfred Desormeau
3 Charing Cross Road
Naples, ME 04055

　 (b) **ATTORNEYS** (Name, Bar number,　If all counsel listed do NOT represent all plaintiffs.
　　　　Firm name, Address, Tel. Number (if known)
　　　　specify who the listed attorney(s) represent(s).
　　　　(if Pro se plaintiff, leave blank)

Rebecca S. Webber, Esq.(Bar #7908)
Amy Dieterich, Esq. (Bar #5413)
Skelton Taintor & Abbott
95 Main Street
Auburn, ME 04210
(207) 784-3200
rwebber@sta-law.com

VIII. (a) **DEFENDANTS** (Name & Address including county)
　　　　and/or [ ]Third-Party,　[ ]Counterclaim or [ ]Cross-Claim Defendants
　　　　[ ]The defendant is a prisoner in a local, state or federal facility.

CVS State Capital, LLC, d/b/a CVS Pharmacy #378 and CVS Pharmacy #2382; CVS RX Services, Inc.;
Caremark PHC, LLC, d/b/a CVS Caremark; and CVS Health Corporation

　 (b) **ATTORNEYS** (Name, Bar number, Firm
　　　　If all counsel listed do NOT represent all defendants name, Address, Tel. Number (if known)
　　　　specify who the listed attorney(s) represent(s).

　　　Damien M. DiGiovanni, Esq. (Bar No. 225625)
　　　Morgan, Brown & Joy, LLP
　　　200 State Street
　　　Boston, MA 02109
　　　(617) 523-6666
　　　ddigiovanni@morganbrown.com

VIII. **RELATED CASE(S) IF ANY**

　　　Assigned Judge/Justice _____　Docket Number

Date:　　March 8, 2017　　　　　Rebecca S. Webber, Esq. (Bar No. 7908)
　　　　　　　　　　　　　　　　Name of Lead Attorney

　　　　　　　　　　　　　　　_____ Signature of Attorney

CV-001, Rev.